IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| MICRO FOCUS (U.S.), INC.<br>9420 Key West Avenue<br>Rockville, Maryland 20850,<br><br>and<br><br>MICRO FOCUS (IP) LIMITED<br>The Lawn, 22-30 Old Bath Road<br>Newbury, Burkshire, RG14 IQN<br>United Kingdom,<br><br>      Plaintiffs<br><br>    v.<br><br>NATIONAL INFORMATION<br>CONSORTIUM TECHNOLOGIES, LLC<br>d/b/a NIC TECHNOLOGIES<br>1477 Chain Bridge Road, Suite 101<br>McLean, Virginia 22101,<br><br>    SERVE ON:<br><br>CT Corporation Systems<br>4701 Cox Road, Suite 301<br>Glen Allen, Virginia 23060-6802,<br><br>      Defendant. | Case No. |

## COMPLAINT

Micro Focus (US), Inc. and Micro Focus (IP) Limited (collectively, "Micro Focus"), by their undersigned attorneys, sue National Information Consortium Technologies, LLC, which does business as NIC Technologies ("NIC"), for compensatory damages in an amount to be established at trial and currently estimated to exceed Three Million Four Hundred Eighty-Seven

Thousand Five Hundred Dollars ($3,487,500.00) and other relief. In support of its claims, Micro Focus states:

## THE PARTIES

1. Plaintiff, Micro Focus (U.S.), Inc. is a Delaware corporation with its principal place of business in Rockville, Maryland. Micro Focus licenses and supports business enterprise computer software, and is the United States subsidiary of Micro Focus International plc, a public corporation based in the United Kingdom.

2. Plaintiff, Micro Focus (IP) Limited, is a corporation incorporated under the laws of the United Kingdom with its principal place of business in the United Kingdom. Micro Focus (IP) owns various intellectual property rights, including the copyrights at issue in this action, and is also a subsidiary of Micro Focus International plc

3. Defendant, NIC, is a California limited liability company with its principal office in Kansas. NIC is registered to do business in Virginia and its principal place of business is that State as identified in the caption of this Complaint. NIC is a subsidiary of NIC, Inc., a publicly traded company which describes NIC's business as "design[ing] and develop[ing] online campaign expenditure and ethics compliance systems for federal and state government agencies," including the Federal Election Commission ("FEC").

## JURISDICTION AND VENUE

4. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

5. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

## NATURE OF THE ACTION

6. This action arises from NIC's breaches of the license agreement that governs its use of Micro Focus's software products known as Object COBOL Developer Suite V4.2

("OCDS"). NIC also licensed another Micro Focus software product known as Net Express 2.0 ("Net Express").

7. NIC incorporated technology from OCDS into a custom computer program, the use or benefits of which NIC has made and continues to make available to numerous individuals or organizations.

8. NIC has not paid Micro Focus for licenses Micro Focus requires before its technology may be used by or for the benefit of third parties. NIC has also failed in other ways to comply with obligations to Micro Focus established in the OCDS license agreement.

9. NIC's failure to comply with the terms of the license agreement breaches that contract and constitutes copyright infringement.

## FACTS COMMON TO ALL COUNTS

### A. The Software and NIC's Licenses

10. NIC licensed Net Express and OCDS from Micro Focus in or about 1999.

11. Net Express and OCDS are proprietary and copyrighted software products belonging to Micro Focus. Net Express and OCDS are registered copyrights under Title 17 of the United States Code.

12. Net Express and OCDS perform similar functions, each consisting of a collection of tools for editing, compiling, and debugging computer applications written in COBOL, one of the oldest programming languages still prevalent in today's computing systems. Whereas Net Express functions in a Microsoft Windows environment, OCDS is used with the UNIX operating systems.

13. By debugging and improving software applications written in COBOL, Net Express and OCDS help programmers use existing COBOL source code in applications that can interface with more modern software.

14. Net Express and OCDS translate source code from COBOL into a set of instructions that can be executed in a Windows or UNIX environment with other programs. For example, COBOL source code developed with Net Express or OCDS will employ Micro Focus's runtime system and application server files to handle system functions such as file and memory management.

15. The license agreements between Micro Focus and NIC are memorialized in an End User License Agreement ("EULA") for the Net Express and OCDS products. A true and accurate copy of the OCDS EULA is attached hereto as Exhibit A.

16. Users of Net Express and OCDS can purchase "development licenses" that permit the licensee to create and develop a new application and "deployment licenses" that permit the use of Micro Focus's software (as incorporated into such a newly created application) in a production environment.

17. For Net Express, NIC purchased development licenses that included certain deployment licenses. NIC was therefore entitled to develop new applications using Net Express and to deploy those applications in a manner that allowed others to use the software, provided that NIC complied with other conditions in the Net Express EULA.

18. For OCDS, however, NIC purchased only a development license which did not include any deployment rights. That is, the license strictly limits NIC's use of the software to development. Specifically, the EULA that NIC purchased for OCDS states that, "**Licensee shall**

**have the right to use the Software solely for its own internal use and benefit.**" (Emphasis in original.)

19. The OCDS EULA further prohibited NIC from "transfer[ing] or mak[ing] available the Software to any third party"; "[c]opying and distribut[ing] the Software, in whole or in part, to third parties"; or using the Software "for time sharing, hosting, service bureau or like purposes."

**B.    The "FECFile" Software Application**

20. The FEC is an independent regulatory agency of the United States Government charged by Congress with administering and enforcing federal campaign finance laws. Federal law requires that "filers," such as candidates' campaigns and political action committees, report campaign contribution information to the FEC.

21. The FEC permits filers to report campaign contribution information electronically, through a software application available over the internet known as "FECFile."

22. FECFile offers a secure facility by which filers submit verified data to the FEC and receive confirmation that the data has been received.

23. In or about the year 1999, NIC worked with the FEC to develop the FECFile application.

24. NIC used Net Express and OCDS in the development of FECFile.

25. NIC hosts FECFile on NIC's server.

26. Since development, part of the FECFile application has been made available to third-party filers of campaign finance information.

27. That part of the FECFile application runs on the Microsoft Windows operating system and uses COBOL source code, developed for the FECFile application with Net Express, to perform certain functions, including validating data entered by filers.

28. After performing these "validation routines" in the Windows environment, filers submit their validated data files to servers operated by NIC.

29. On NIC's UNIX servers, a program known as "Disclose" performs various functions, one of which is to re-validate the data files submitted by the third-party filers.

30. That validation routine is written in COBOL and employs Micro Focus's OCDS technology to confirm the correctness of each filer's submission.

31. After running the NIC validation routine on the NIC servers using Disclose (the application created with OCDS), NIC generates an email that is sent directly to each filer.

32. That email confirms FECFile's receipt of the filer's submission. If the validation routine determines that the submission is correct, the email confirms acceptance of the filing; if the software cannot validate the submission's correctness, the email notifies the third-party filer that the submitted data file contains errors.

C. **NIC's Violation of the OCDS EULA**

33. The OCDS EULA authorizes NIC to use OCDS "for its own use and benefit" to develop software using COBOL source code. But the EULA expressly prohibits NIC from deploying such applications for the benefit of any third party unless NIC purchases deployment licenses for such production use.

34. NIC has never purchased deployment licenses for OCDS.

35. FECFile, as developed and deployed by NIC, violates the OCDS EULA by using Micro Focus proprietary technology to run the COBOL-based validation routine that resides on

NIC's UNIX based servers, then providing the results of those validation routines to the third-party filers by email.

36. Filers thereby receive a direct benefit of Micro Focus's OCDS technology, even though NIC has not paid for the license fees required by Micro Focus for deployment of the OCDS software.

37. NIC has admitted that the FECFile application is accessed and used by more than 3,000 separate third-party users over a 12 month period and such users change over time.

## COUNT I
### (Breach of Contract)

38. Micro Focus incorporates the allegations of the preceding paragraphs herein by reference.

39. Because it incorporated OCDS in FECFile's UNIX-based validation routine, NIC was required to comply with restrictions in the OCDS EULA on deployment of the Disclose software.

40. Those restrictions include a prohibition on third parties using or benefitting from OCDS because NIC did not purchase deployment licenses for OCDS.

41. NIC breached its obligations under the OCDS EULA by making the software available to third parties, or by using the software in a hosting or similar environment that gave third parties access to or the use or benefits of the software.

42. As a direct result of Defendant NIC's contractual breaches, Micro Focus has suffered and continues to suffer monetary damages, including the loss of license fees to which it is entitled in connection with Defendant NIC's deployment of OCDS.

WHEREFORE, Micro Focus requests that this Honorable Court:

(A) award compensatory damages against Defendant NIC in an amount to be established at trial and currently estimated to exceed Three Million Four Hundred Eighty-Seven Thousand Five Hundred Dollars ($3,487,500.00) based upon Micro Focus's deployment license fees and applicable maintenance fees;

(B) award Micro Focus pre-judgment interest and the costs, expenses, and reasonable attorneys' fees that it incurs prosecuting this Complaint; and

(C) grant Micro Focus such other and further relief as may appear just and proper.

### COUNT II
### (Copyright Infringement – Violation of 17 U.S.C. § 501)

43. Micro Focus incorporates the allegations of the preceding paragraphs herein by reference.

44. Defendant NIC has violated, and continues to violate, Micro Focus's registered copyright by deploying its OCDS-developed application program, "Disclose," in a production environment without paying applicable deployment license fees.

45. Defendant NIC has infringed, and continues to infringe, Micro Focus's copyright, in violation of 17 U.S.C. § 501.

46. As a direct result of such copyright infringement, Micro Focus has suffered, and will continue to suffer, monetary damages.

WHEREFORE, Micro Focus requests that this Honorable Court:

(A) award Micro Focus, at Micro Focus's election, either actual damages and additional profits pursuant to 17 U.S.C. § 504(a) and (b), or statutory damages pursuant to 17 U.S.C. § 504(c);

(B) award Micro Focus pre-judgment interest and the costs, expenses, and reasonable attorneys' fees that it incurs prosecuting this Complaint; and

(C) grant Micro Focus such other and further relief as may appear just and proper

## COUNT III
### (Declaratory Judgment)

47. Micro Focus incorporates the allegations of the preceding paragraphs herein by reference.

48. Micro Focus has asserted to Defendant NIC that, because its usage exceeds the licenses granted, Micro Focus is entitled to exercise its above-referenced common law and statutory rights, and Defendant NIC will be liable for the amount of such license and maintenance fees as NIC may be required to purchase based on its use and infringement of Micro Focus's OCDS copyrighted software

49. Defendant NIC has disputed Micro Focus's assertions concerning its rights.

50. A declaration of the parties' actual rights and obligations will serve to end the controversy created by Defendant NIC's wrongful conduct.

WHEREFORE, Micro Focus requests that this Honorable Court:

(A) declare that Defendant NIC's usage has exceeded the licenses granted pursuant to the OCDS EULA;

(B) declare that Defendant NIC is liable to Micro Focus for the value of such license and maintenance fees as NIC may be required to purchase based on its use and infringement of Micro Focus' s OCDS copyrighted software ;

(C) award Micro Focus interest and the costs, expenses, and reasonable attorneys' fees that it incurs prosecuting this Complaint; and

(D) grant Micro Focus such other and further relief as may appear just and proper.

Respectfully submitted,

/S/
Geoffrey H. Genth, Bar No. 08735
Stuart M.G. Seraina, Bar No. 25971
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030 - Telephone
(410) 539-1269 - Facsimile

Attorneys for Plaintiff, Micro Focus (US), Inc.
and Micro Focus (IP) Limited

Dated: February 14, 2011.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Micro Focus (U.S.), Inc. and Micro Focus (IP) Limited, hereby demand a trial by jury of all issues triable of right by a jury.

/S/
Geoffrey H. Genth, Bar No. 08735
Stuart M.G. Seraina, Bar No. 25971
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030 - Telephone
(410) 539-1269 - Facsimile

Attorneys for Plaintiff, Micro Focus (US), Inc.
and Micro Focus (IP) Limited